IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:04-CV-897-A |
| PAUL M. GRAHAM, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of plaintiff, Liberty
Mutual Insurance Company, for summary judgment.  The court,
having considered the motion, the response of defendant, Paul M.
Graham, the reply, the record, the summary judgment evidence, and
applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

On December 9, 2004, plaintiff filed its original, and on
December 16, 2004, its first amended, complaint for declaratory
judgment.  Plaintiff seeks declarations that (a) it has no
payment obligation as to claims made against defendant in a
lawsuit styled "Mikel Johnson, et al. v. Paul M. Graham, et al.,"
Cause No. 348-205932-04, pending in the 348th Judicial District
Court of Tarrant County, Texas ("the underlying lawsuit"),
because at the time of the accident on which the suit is based
defendant was not an insured under its policy number AS1-191-
419045-023 (the "policy") plaintiff had issued to Eagle

Contracting, L.P., ("Eagle"), and (b) there being no duty to pay, plaintiff has no duty to provide a defense to defendant in the underlying lawsuit.

II.

### Ground of the Motion

Plaintiff urges that it is entitled to a declaration that it has no duty to pay on behalf of defendant any damages assessed against him in the underlying lawsuit, because the summary judgment record establishes that defendant was not an insured under the policy, and that, for that reason, plaintiff had no obligation to provide defendant a defense in the underlying suit. To be an insured at the time of the accident giving rise to the claims being made against defendant in the underlying suit, defendant would have to have been using the vehicle he was operating with Eagle's permission at that time.  When Eagle furnished the vehicle to defendant, it gave defendant permission to use it for business purposes only.  At the time of the accident, defendant was not using the vehicle for business purposes; rather, he was on a purely personal venture when he was involved in the accident after drinking alcohol late into the evening.

III.

### Objections to the Summary Judgment Evidence

Defendant devotes the first part of his brief to objections to plaintiff's summary judgment evidence.  The court is not striking any of the summary judgment evidence but, as is its

2

custom, will give the evidence whatever weight, if any, it may deserve.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its]

3

claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the
outcome of the action.  <u>Anderson</u>, 477 U.S. at 248.  Unsupported
allegations, conclusory in nature, are insufficient to defeat a
proper motion for summary judgment.  <u>Simmons v. Lyons</u>, 746 F.2d
265, 269 (5th Cir. 1984).

     The standard for granting a summary judgment is the same as
the standard for rendering judgment as a matter of law.  <u>Celotex
Corp.</u>, 477 U.S. at 323.  If the record taken as a whole could not
lead a rational trier of fact to find for the non-moving party,
there is no genuine issue for trial.  <u>Matsushita</u>, 475 U.S. at
597.  <u>See also</u> <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th
Cir. 1969) (en banc) (explaining the standard to be applied in
determining whether the court should enter judgment on motions
for directed verdict or for judgment notwithstanding the
verdict).

V.

<u>Undisputed Evidence</u>

     The following is an overview of evidence pertinent to the
motion for summary judgment that is undisputed in the summary
judgment record:

4

November 11, 2003, was defendant's fortieth birthday.
Defendant drove Eagle's pickup truck directly to his home from
the place (approximately five miles from his home) where he was
performing his work for Eagle.  He arrived home between 5:10 and
6:10 p.m.  Defendant typically went home, ate dinner, and watched
television.  Even though it was his birthday, he had no plans for
the evening.  At some point late in the evening, as defendant was
just about ready for bed, he received a telephone call from a
woman he met and to whom he had given his telephone number.  The
woman suggested that they go out, because it was defendant's
birthday.  Defendant, by use of Eagle's pickup truck, met the
woman at a restaurant near the intersection of Highways 820 and
35 in north Fort Worth, approximately fifteen miles from
defendant's home.  While at the restaurant, defendant had several
drinks.

At approximately 1:00 a.m. on November 12, 2003, about two
hours after the restaurant closed, defendant, while operating
Eagle's pickup truck, struck a motorcycle being driven by Mikel
Johnson ("Johnson").  Christy Wright ("Wright") was a passenger
on the motorcycle.  Both vehicles were eastbound on Alliance
Gateway Freeway in Fort Worth, Texas, when the collision that
gave rise to the underlying lawsuit occurred.  Defendant fled the
scene.  When apprehended, he was arrested and charged with
driving while intoxicated.

At the time of the collision, defendant was an employee of
Eagle, which had provided him and three other employees company-

owned vehicles.  When defendant received his pickup, he signed a
written acknowledgment of receipt of the Eagle vehicle policy,
which provided, in pertinent part:

> b.  Usage of the vehicle must be limited to
> company-related business.  Use of this vehicle is
> intended to make your job easier, more efficient and
> profitable.  You are encouraged to use it as such.
>
> c.  Employees receiving this benefit agree to
> abide by all local, state and federal laws regarding
> motor vehicle usage.  Violation of these laws will
> result in the loss of this privilege.

Pl.'s App. at 18.  On November 18, 2003, Eagle revoked
defendant's privilege of driving a company vehicle as a result of
his having violated the above-referenced provisions of the
vehicle policy.

The "Business Auto Coverage" part of the insurance policy
issued by plaintiff to Eagle covered the pickup truck defendant
was driving at the time of the collision.  The payment and
defense obligations under the Business Auto Coverage Form are
worded as follows:

> We will pay all sums an **insured** legally must pay as
> damages because of **bodily injury** or **property damage** to
> which this insurance applies, caused by an **accident** and
> resulting from the ownership; maintenance or use of a
> covered **auto**.
>
> We have the right and duty to defend any **suit** asking
> for these damages.  However, we have no duty to defend
> **suits** for **bodily injury** or **property damage** not covered
> by this Coverage Form.  We may investigate and settle
> any claim or **suit** as we consider appropriate.

Id. at 165.  The policy defined the word "insured," as used in
the foregoing policy language, as follows:

> **1.   WHO IS AN INSURED**

6

>    The following are **insureds**:
>
>    **a.** [The named insureds] for any covered **auto**.
>
>    **b.** Anyone else while using with [the named insureds'] permission a covered **auto** [the named insureds] own, hire or borrow . . . .[1]

Id. Defendant was not a named insured under the policy.

On June 4, 2004, Johnson and Wright filed the underlying lawsuit. They have sued defendant for negligence and negligence per se under the Texas Transportation Code and Texas Penal Code; Eagle Contracting, Inc.,[2] for negligent entrustment; Eagle, under theories of respondeat superior and negligent entrustment; and Billy Haynes[3] under theories of respondeat superior and negligent entrustment.

With regard to defendant's use of the vehicle, Johnson and Wright allege in the underlying lawsuit that:

>    12.  At the time of the incident complained of, Defendant Graham was driving a Truck registered to his employer, Eagle Contracting L.P. and Billy Haynes. Such vehicle was entrusted to Defendant Graham by Defendant Eagle Contracting L.P. and Billy Haynes, a partner of Eagle Contracting, L.P. on or about January 29, 2001 as a part of his job with Eagle Contracting Corporation and as a method of remuneration for services performed by Graham for Defendant Eagle Contracting, L.P., Eagle Contracting Corporation and Billy Haynes. Eagle Contracting L.P. and Billy Haynes primary reason for obtaining company vehicles for its key employees was to allow it to be more competitive in

---

[1]As used in the insurance policy, the words "you" and "your," which are replaced by the bracketed "the named insureds," refer to the named insureds.  Pl.'s App. at 164.

[2]Eagle Contracting, Inc., is a predecessor of Eagle Contracting, L.P.

[3]The pickup truck defendant was operating was registered in the names of both Eagle Contracting, L.P., and Billy Haynes.

recruiting and maintaining employees and to encourage use of the vehicles by company employees.  Paul Graham has a long history of permissive use of the vehicle notwithstanding any written or unwritten policies to the contrary.  Eagle Contracting, LP, Billy Haynes, a partner, and Charles Howard, president and managing partner, all knew and condoned the use of a company vehicle by Graham and other employees in violation of purported policies of Eagle Contracting L.P.  Eagle Contracting, L.P. specifically authorized and allowed Graham to drive a company vehicle after he had been drinking alcoholic beverages on multiple occasions. Eagle Contracting, L.P. has regular company functions where they serve alcoholic beverages to employees and allow them to drive away in company vehicles.  Eagle Contracting L.P. has no effective or even attempted policy or practice to regulate personal use of vehicles other than presentation of a single sheet of cautionary paper at the time of the presentation of the truck to the employee.  Billy Haynes and Charles Howard both knew of and approved Paul Graham to use his company vehicle to drive to see his children in East Texas. Partner Billy Haynes had Graham drive to his house in the company truck to go fishing together.  Billy Haynes and President/Managing partner Charles Howard knew Graham drank alcohol and then drove the company truck. Graham had permission from Partner/supervisor Billy Haynes to even allow Graham's wife to drive the truck. Any purported policy or practice enforcing the policy against driving company vehicles for personal use or even when intoxicated was abrogated when employee, Harlan Ennis, was arrested for Driving While Intoxicated in a Eagle Contracting L.P. vehicle and Harlan Ennis received no limitation on his right to drive the company vehicle nor any punishment for his breach of this purported policy for over six (6) months while his DWI case was pending even though the company was privy to the fact that Harlan Ennis had blown an intoxilyzer test result far in excess of the legal intoxication presumption in Texas.  Eagle Construction L.P. knew or presumed that some or all of its employees used their company vehicles for personal use.  Paul Graham had all of his gasoline and maintenance costs reimbursed by Eagle Contracting, L.P.  He and all other Eagle Construction, L.P. employees were required to submit copies of all of his gas receipts to the company for reimbursement.  Eagle Construction L.P. had receipts in its possession for months and years clearly indicative of the use of Graham's company vehicle for personal use.  Yet, Eagle Contracting, L.P. never even asked Graham about his personal use of the vehicle much less limited its use.  Eagle Construction, L.P. had no

8

policy or practice to inquire into the use of the
company vehicles driven by company employees to assure
compliance with its alleged policies.  Even Billy
Haynes, a company partner and direct supervisor of Paul
Graham and Charles Howard, the company President and
managing partner, have used their company vehicles for
personal use on occasion.  Charles Graham was never
told directly that he was not to drink and drive and
was never told not to use the company vehicle for
personal use.  Charles Howard, President and managing
Partner of Eagle Construction, L.P., each year provided
a list of names of company personnel who were
authorized to drive company cars to Liberty Mutual
Insurance Company.  Liberty Mutual themselves could
have inquired into the use and driving history of the
employees but they chose only to verbally inquire of
Charles Howard.  The night of the incident which forms
the basis of this lawsuit was the fortieth (40)
Birthday of Defendant Paul Graham.  Eagle Contracting,
L.P., Billy Haynes and Eagle Contracting Corporation
regularly allow some of its employees, including
Defendant Graham, to drive business vehicles in pursuit
of personal activities.  In this instance, Graham had
earlier parked his company vehicle behind his personal
car at his home and use of the company vehicle to go to
a restaurant and bar was a matter of convenience and
necessity to him.

Id. at 3-5 (errors in original).

Defendant demanded that plaintiff defend him in the
underlying lawsuit.  However, plaintiff rejected defendant's
demand, maintaining that defendant was not an insured under the
policy.  (Plaintiff is defending the remaining defendants in the
underlying lawsuit.)

VI.

Whether Plaintiff has a Duty to Defend
Defendant in the Underlying Lawsuit

Texas applies the "eight corners" rule whereby an insurer's
duty to defend its insured is determined by the allegations in
the pleadings and the language of the insurance policy.  National
Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939

9

S.W.2d 139, 141 (Tex. 1997).  However, the court "may look at

evidence outside the pleadings under certain circumstances."

Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 194 (5th

Cir. 1998).  The rule is:

> Where the insurance company refuses to defend its
> insured on the ground that the insured is not liable to
> the claimant, the allegations in the claimant's
> petition control, and facts extrinsic to those alleged
> in the petition may not be used to controvert those
> allegations.  But, where the basis for the refusal to
> defend is that the events giving rise to the suit are
> outside the coverage of the insurance policy, facts
> extrinsic to the claimant's petition may be used to
> determine whether a duty to defend exists.

Id. (quoting Gonzales v. Am. States Ins. Co., 628 S.W.2d 184, 187

(Tex. Civ. App.--Corpus Christi 1982, no writ)).  As this court

has noted:

> [A] person who is not an insured under an insurance
> policy is [not] to be treated as one for defense
> purposes just because of false allegations made by the
> damage suit plaintiff.  The status of the 'insured' is
> to be determined by the true facts, not false,
> fraudulent or otherwise incorrect facts that might be
> alleged by a personal injury claimant.

Blue Ridge Ins. Co. v. Hanover Ins. Co., 748 F. Supp. 470, 473

(N.D. Tex. 1990).  None of the cases cited by defendant holds to

the contrary.  Rather, each concerns a determination of whether

an insurer has a duty to defend an insured.  See Northfield

Insurance Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 n.3

(5th Cir. 2004) (distinguishing an earlier Fifth Circuit case

where extrinsic evidence was allowed to determine the fundamental

issue of whether the property involved was indeed insured under

the policy).

Here, plaintiff contends that there is no duty to defend, because defendant was not an insured at the time of the accident. Looking only at the allegations of the pleading in the underlying lawsuit, the state court plaintiffs have not pleaded that defendant was "using with [Eagle's] permission a covered auto" on the night in question. Rather, they refer in a conclusory way to a number of unrelated events, many involving other vehicles and persons.[4] The summary judgment evidence reinforces the conclusion that defendant was not using the vehicle for business purposes at the time of the accident. Old Am. County Mut. Fire Ins. Co. v. Renfrow, 130 S.W.3d 70 (Tex. 2004); Coronado v. Employers' Nat'l Ins. Co., 596 S.W.2d 502 (Tex. 1980).

A conclusion that, under the summary judgment record of this case, plaintiff has no defense or payment obligation related to the claims being asserted against defendant in the state court action comes directly within the expectations of the parties to the insurance contract. The coverage is designated as "Business Auto Coverage." For there to be a payment obligation, the claims must be against an "insured." There is no summary judgment evidence that defendant was an insured of plaintiff under the business policy at the time of the accident because there is no summary judgment evidence that he was using the vehicle with the permission of his employer at that time. Indeed, the summary

---

[4]The allegations tend to show that defendant's non-business use of the vehicle on other occasions was with permission of Eagle Contracting, L.P.'s owners. References to drinking and driving appear to be related to company-sponsored events.

judgment evidence affirmatively establishes lack of permissive use at the time of the accident.  The defense obligation part of the business insurance coverage explicitly requires that the suit in question be one asking for damages for which the insurance company has a payment obligation.  The summary judgment record establishes without dispute that there are no damages claimed against defendant for which the insurance company has any payment obligation.  The law is quite clear that, under those circumstances, the insurance company has neither a payment nor a defense obligation.  <u>See</u> <u>McLaren v. Imperial Cas. & Indem. Co.</u>, 767 F. Supp. 1364, 1374-75 (N.D. Tex. 1991), <u>aff'd</u>, 968 F.2d 17 (5th Cir. 1992).

Eagle might well have liability to the state court plaintiffs under a negligent entrustment, or some similar, theory based on the facts alleged in the state court pleading, <u>supra</u> at 8-10, but that is not the issue here.  In this action, the issue is whether the contractual obligations undertaken by plaintiff in its policy contract with Eagle cause plaintiff to have payment and defense obligations to defendant in reference to the claims being made against defendant in the underlying lawsuit.  There is no summary judgment evidence that would support a conclusion that plaintiff has any such obligation under the business insurance policy.  Rather, the undisputed evidence establishes that it has no such obligation.

VII.

Order

For the reasons discussed herein,

The court ORDERS that plaintiff's motion for summary judgment be, and is hereby, granted.

The court further ORDERS and DECLARES that plaintiff has no obligation under the policy to make any payment on behalf of defendant with respect to any of the claims that are being asserted against defendant, or any judgment that might be rendered against defendant, in the underlying lawsuit or to provide a defense to defendant as to the claims against defendant in the underlying lawsuit.

SIGNED June 14, 2005.

_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge

13